Filed:  August 8, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1607
(CA-92-40)

John Trobough, et al,

Plaintiffs - Appellants,

versus

City of Martinsburg, et al,

Defendants - Appellees.

O R D E R

The Court amends its opinion filed July 30, 1997, as follows:

On page 2, first line of the opinion:  "Per Curiam" is corrected to read "<u>HILTON, District Judge</u>."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

JOHN TROBOUGH; SUSAN YARR
TROBOUGH,
Plaintiffs-Appellants,

v.

No. 96-1607

CITY OF MARTINSBURG; CITY COUNCIL
OF THE CITY OF MARTINSBURG; G.
DALE FISHBACK, JR.; DAN H.
NIELSEN,
Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
Irene M. Keeley, District Judge.
(CA-92-40)

Argued: January 29, 1997

Decided: July 30, 1997

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge,
and HILTON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Hilton wrote the opinion, in
which Chief Judge Wilkinson and Judge Ervin joined.

_____

COUNSEL

**ARGUED:** James Paul Campbell, JAMES P. CAMPBELL & ASSO-
CIATES, P.C., Leesburg, Virginia, for Appellants. Brian Alexander

Glasser, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellees. **ON BRIEF:** Charles F. Printz, Jr., BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

HILTON, District Judge:

Appellants John and Susan Trobough appeal from the district court's grant of summary judgment. Appellants allege that the City of Martinsburg, West Virginia, the City Council and certain City officials have violated their constitutional rights to due process, equal protection and have taken their property without just compensation. We affirm the district court's decision.

I.

The Appellants purchased a four unit apartment building at 210 East Burke Street in 1988. Over the next few years, several citizen complaints were filed with the City concerning the activities of certain residents and the condition of the apartments. For example, in 1991, the above ground sewer line ruptured. The discharge of raw sewage onto the ground drew the City's attention to the property. The City ordered the Troboughs to fix the pipe. The City also ordered abatement of an accumulation of garbage, old appliances, old furniture and other debris at the back of the tenement. The City requested that the Troboughs put a gutter and downspouts on the roof of a small building in the back of the property because water running off the roof flooded the basement of the neighbor's residence at 212 East Burke Street.

In May of 1992, a broken sewer pipe again drew the City's attention to the property. The City inspected the property and informed the

2

Troboughs that they were in violation of the State Building Code, and had five days to correct the violations. On June 2, 1992, neighbors to the property, Paul and Heidi Sweeney, wrote to the Troboughs complaining about alleged drug dealing, public urination and drunken brawls taking place on the Trobough's property. The Sweeneys also wrote to Nan Stevens, a City building inspector, requesting that she take action to take care of the problem. Eight days later Mr. Sweeney again wrote the City to complain about more drug dealing at 210 East Burke. Mr. Sweeney's letter also reported his observations (through a perennially open door and a broken glass window in the vacant first floor at 210 East Burke), that a puddle of water was covering the kitchen floor, the floor itself sagged, the rear porch was rotted and patched haphazardly with scraps of plywood and lumber, a pervasive odor of sanitary wastes and rotting foodstuffs emanated from the porch and central hallway, and there were no garbage cans available to the tenants of the property. Mr. Sweeney also reported that when invited by two residents of 210 East Burke he entered their apartments and found inadequate plumbing, heating and electrical services. According to Mr. Sweeney there were no smoke detectors in the building. In his letter, Mr. Sweeney requested that the City investigate the Trobough's property.

City officials decided to investigate and inspect 210 East Burke Street, and on June 26, 1992 sent a notice to the Troboughs giving the date and time of the inspection. The City building inspectors applied for and obtained a search warrant to permit inspection of 210 East Burke for purposes of examining, among other things, the safety of the electrical system. The City used the search warrant to inspect Apartment One of the building on July 1, 1992.

A team of police officers, building inspectors and an electrical inspector inspected the apartment, taking photographs. They noted numerous problems, including but not limited to: broken sidewalks; unglazed or unopenable windows; lack of screens and smoke detectors; inadequate handrails, food preparation areas and garbage facilities; foundation walls out of plumb; flues pulling away from the furnace and the wall; and pipes repaired with twine. The fire chief's inspection of the tenement revealed: no approved means for exiting the second floor of the tenement; no smoke detectors; and no fire extinguishers. The electrical inspector also noted serious problems,

3

including: lack of proper grounding; inadequate number of outlets which were then overloaded with extension cords; substitution of balled up aluminum foil for a fuse; missing or broken handles on the disconnects with conductors jumpered across the inoperable disconnect; inadequate lighting; use of a 30 amp fuse where the maximum allowable was 15 amps; and a rusting indoor junction box being used outside. The electrical inspector concluded that the condition of the wiring and equipment posed "a serious threat to personal safety and property and the same threat to its surroundings."

Following the inspection the City issued an Emergency Condition Order, which was posted on the property, requiring that the apartments be vacated and closed until such time as the structure was brought up to the standards of the National Electric Code, the National Fire Life Safety Code and the 1990 Property Maintenance Code. The Troboughs ignored the order to vacate, failed to avail themselves of the administrative appeals process, and removed the posted order from the premises.

On July 17, 1992, the Troboughs sought a building permit in order to perform maintenance limited to replacing the main electrical service disconnects for each apartment. The City denied the permit on July 21, 1992 until two copies of the specifications and plans were submitted, and until the application included enough work to bring the structure into compliance with applicable codes. On July 21, 1992, the City obtained arrest warrants for the Troboughs for removing the Emergency Condition Order and failing to obey the posted notice. The Troboughs were arrested. After arraignment, they filed this law suit. To date they have not been tried on the charges, nor have they repaired the property.

II.

The Troboughs' complaint arises from the City's order to vacate and close their rental property for violations of the Property Maintenance Code and in arresting them for removing the Emergency Condition Order and failing to vacate the premises or repair the conditions properly. The district court referred the defendants' motion for summary judgment to the magistrate judge for submission of proposed findings of fact and a recommended disposition. The magistrate judge

4

filed his proposed finding and recommended disposition, concluding that the defendants' motion for summary judgment should be granted. The district court, after considering the Trobough's objections, adopted, with slight exception, the magistrate judge's conclusions as its own and granted summary judgment for the defendants.

The decision of the district judge should be affirmed. Appellants seek to try their state law claims in federal court under the guise of 42 U.S.C. § 1983. However, appellants have no constitutional claims to support a § 1983 action. In order for Plaintiffs to establish a prima facie case pursuant to 42 U.S.C. § 1983 they must have suffered the deprivation of a federal right, privilege or immunity by defendants' actions. However, the continued maintenance of an illegal use or a public nuisance is not a protected property interest. Mugler v. Kansas, 123 U.S. 623 (1887); Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992); Keystone Bituminous Coal Assn. v. DeBenedictus, 480 U.S. 470 (1987); Agins v. Tiburon, 447 U.S. 255 (1980).

An electrical inspector concluded that 210 East Burke's electrical system constituted "a serious threat to personal safety and property." In addition, the fire chief's inspection of the tenement revealed (i) no approved means for exiting the second floor of the tenement; (ii) no smoke detectors, and (iii) no fire extinguishers. Together these reports (and reports of other inspectors) more than adequately support the district court's conclusion that the tenement at 210 East Burke Street constituted a menace to the health and safety of those inside and was a public nuisance.

To state a substantive due process claim, the Troboughs must demonstrate a lost "property interest, rooted in state law." Biser v. Town of Bel Air, 991 F.2d 100, 103-04 (4th Cir. 1993). However, no person enjoys a property interest in maintaining a nuisance. Keystone, 480 U.S. at 492 n. 20-22. Thus, since the City's actions in this case involved ameliorating a serious risk to persons and property, the Troboughs' substantive due process claim must fail.

Because the City acted to protect its citizens from a nuisance, the Troboughs' procedural due process claim also fails. In situations where a government must act to protect its citizens from a nuisance, the availability of a prompt hearing, subsequent to the action satisfies

5

the demands of due process. See Matthews v. Eldridge, 424 U.S. 319, 333-35 (1976); McLean Trucking Co. v. OSHRC, 503 F.2d 8, 11 (4th Cir. 1974). In this case, the City offered the Troboughs a chance to participate in a subsequent hearing to contest the issuance of the Emergency Condition Order. The Troboughs ignored the opportunity. The City was acting to ameliorate a nuisance, and provided the Troboughs an opportunity to participate in the process, a procedure which vitiates the Troboughs' procedural due process claim.

The Troboughs' have no taking claim. A taking occurs when a state extinguishes a property interest for public use. See Lucas, 505 U.S. at 1019. However, a taking does not occur when a state eliminates a nuisance. Keystone, 480 U.S. at 489-91; Lucas, 505 U.S. at 1023-24. In this case the City's actions were directed at eliminating a nuisance, and as a result the Troboughs' taking claim must fail.

Finally, the Troboughs' equal protection claim must fail. The Troboughs must prove that the City's actions were not rationally related to a legitimate government interest. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 440 (1985). However, the City's treatment of the Troboughs in this case was rationally related to the legitimate government aim of eliminating dangers to people and property. Thus the Troboughs' equal protection claim also fails.

The Troboughs had every opportunity to seek resolution of their claims in state court and chose not to do so. The federal courts are overburdened with litigation and do not need, and should not be burdened with, this kind of action which seeks resolution of state claims.

AFFIRMED

6